UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
POLISH STEAMSHIP COMPANY, and      :     13 Civ.2435 (WHP)
POLSTEAM SHIPPING COMPANY,
                                                              :
                          Plaintiffs,               ECF CASE
                                                              :
       -against-
                                                              :
NOVEL COMMODITIES S.A.,
                                                              :
                          Defendant.       :
------------------------------------------------------X

## PRELIMINARY STATEMENT

Defendant, NOVEL COMMODITIES S.A. (hereinafter "Novel" or "Defendant"), by its undersigned counsel, Lennon, Murphy, Caulfield & Phillips, LLC, submits the within Memorandum of Law in Support of its Motion to Partially Vacate or Modify the April 12, 2013 Order for Issuance of Maritime Attachment and Garnishment (hereinafter "Order") obtained by Plaintiffs, POLISH STEAMSHIP COMPANY and POLSTEAM SHIPING COMPANY (hereinafter individually referred to as "PSC" or "Polsteam" or collectively as "Plaintiffs"), pursuant to Rule E(4)(f) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Claims and Local Rule E.1.

## STATEMENT OF FACTS

Plaintiffs initiated the subject maritime attachment in the Southern District of New York on April 11, 2013 by filing a Verified Complaint seeking relief pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. *See Plaintiffs' Verified Complaint, Docket Entry No. 1.* Plaintiffs' Verified Complaint alleged damages, inclusive of attorneys' fees and costs, in the amount of $11,507,642.15. At Plaintiff's request, on April 12, 2013

the Court issued the Order authorizing the attachment of Novel's property in the sum of $11,507,642.15. *See Order for Issuance of Process of Maritime Attachment and Garnishment, Docket Entry No. 2.*

The Plaintiffs' Verified Complaint alleges claims against the Defendants separated into two causes of action. The first cause of action is a claim against the Defendants for demurrage in the sum of $805,715.34 arising under the charter party. *See Plaintiffs' Verified Complaint, ¶¶23-25, Docket Entry No. 1.* Defendant's motion does not address the first cause of action permitting Plaintiffs to seek security therefore. For avoidance of any doubt, however, Defendant does not concede that Plaintiff is entitled to recovery on the claim set out in the first cause of action. Defendant also refers to the Plaintiff's reservation of rights to have the underlying merits of all disputes resolved in London pursuant to English law. *See Plaintiff's Verified Complaint, ¶¶ 35-36.*

The Plaintiffs' Verified Complaint alleges a second cause of action in respect of a claimed breach of a Letter of Indemnity. Briefly, the Letter of Indemnity concerns the Defendant's alleged obligation to provide bail or other security necessary to enable the release of Plaintiffs' Vessel NOGAT from arrest by non-party ACODIS. As set out in the Plaintiffs' Verified Complaint, ACODIS were cargo receivers in respect of a cargo carried aboard Plaintiffs' Vessel OLZA which Vessel was the subject of a charter party between the parties and which forms the basis of the Plaintiffs' first cause of action.

However, it is primarily with respect to the Plaintiffs' second cause of action, which forms the majority of Plaintiffs' claims, that the Defendant challenges the propriety of this maritime attachment. Under English law, which governs the claims asserted by the Plaintiffs under the Letter of Indemnity[1], Plaintiffs' claims are simply premature and contingent indemnity claims which do

---

[1] Plaintiffs concede that the Letter of Indemnity is governed by English law. *See Verified Complaint at ¶29, Docket Entry No. 1*

2

not qualify as *prima facie valid* maritime claims for which prejudgment security may be obtained via Supplemental Rule B maritime attachment.

## ARGUMENT

### POINT I

### IT IS PLAINTIFFS' BURDEN TO SHOW CAUSE WHY ITS ATTACHMENT SHOULD NOT BE VACATED

A plaintiff is required to shoulder the burden at a post-attachment hearing to prove, *inter alia,* that "it has a valid prima facie admiralty claim against the defendant." *See* Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 445 (2d Cir. 2006). Supplemental Admiralty Rule E(4)(f) of the Federal Rules of Civil Procedure provides:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

Aqua Stoli, 460 F.3d at 445. Plaintiffs are therefore burdened to prove that their maritime attachment is, in all respects, proper. Supplemental Rule E(4)(f) does not set forth the form of the post-attachment hearing but rather permits a flexible approach dependent on the issues and evidence before the Court. See Salazar v. The Atlantic Sun, 881 F.2d 73, 79 (3d Cir. 1989); Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigaciion, C.A., 169 F. Supp.2d 1341, 1357-59 (M.D. FL. 2001).

Local Rule E.1 provides that the hearing on an application based on Supplemental Rule E(4)(f) is to be conducted within seven (7) days unless otherwise ordered. As explained herein, the Plaintiffs' attachment should be partially vacated, or modified, because they are not entitled to security for the majority of claims for which prejudgment security has been granted under Supplemental Rule B.

3

## POINT II

## PLAINTIFFS' ATTACHMENT FOR ALLEGED DAMAGES ARISING UNDER THE LETTER OF INDEMNITY IS PREMATURE UNDER ENGLISH LAW UNLESS THE CLAIMS HAVE BEEN PAID OR SETTLED

Under the English law that governs Plaintiffs' efforts to obtain indemnity against Novel for ACODIS' alleged claims which support its arrest of Plaintiffs' vessel NOGAT will not accrue unless and until they have been paid by Plaintiffs. Prior to that time such claims are unripe or contingent indemnity claims and do not suffice as *prima facie* valid maritime claims to allow for attachment of Novel's property in this district under Supplemental Rule B. However, for sake of clarity Defendants do not contest herein that aspect of the Plaintiffs' claims arising under the Letter of Indemnity which concern the alleged damages caused by the Vessel arrest in the sum of $121,926.81 insofar as these can be documented to have been reasonably incurred and/or paid for by the Plaintiffs. Rather, it is the claim of $9,000,000 for bail or other security demanded, predicated on ACODIS' arrest of the Plaintiffs' vessel NOGAT, which Novel contends is a premature indemnity claim improper for Supplemental Rule B purposes.

In Bottiglieri di Navigazione SpA v. Tradeline LLC, 472 F. Supp.2d 588 (S.D.N.Y. 2007) Judge Kaplan found that under the leading English decision addressing claim ripeness, *Telfair Shipping Corp. v. Intersea Carriers S.A. (The "Caroline P")*, a maritime attachment would be vacated as for lack of ripeness since payment had not been made on the underlying alleged claim. On review, the Second Circuit Court of Appeals issued a Summary Order upholding Judge Kaplan's decision. Bottiglieri di Navigazione SpA v. Tradeline LLC, 2008 U.S. App. LEXIS 20028 (2d Cir., Sept. 17, 2008).

Novel also directs the Court's attention to the following decisions all of which have reached the same conclusion as reached by Judge Kaplan and as has been approved by the Second Circuit

Court of Appeals: JK Int'l Pty, Ltd. v. Agriko S.A.S., 06-CV-13259 (KMK), 2007 U.S. Dist LEXIS 10074 (S.D.N.Y. 2007); Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd., 478 F. Supp. 2d 532 (S.D.N.Y. 2007); Aosta Shipping Co. Ltd. v. OSL S.S. Corp., 594 F. Supp. 2d 396 (S.D.N.Y. 2009); Sanko S.S. Co. Ltd. v. China Nat'l Chartering Corp., 536 F. Supp. 2d 362 (S.D.N.Y. 2008); and T&Q Shipping, Ltd. v. Lydia Mar Shipping Co., S.A., 415 F. Supp. 2d 310 (S.D.N.Y. 2006).

It is dispositive that Plaintiffs do not allege that the $9,000,000 security has actually been provided to ACODIS to obtain the release of its vessel NOGAT. Only upon such showing would it be arguably permitted Supplemental Rule B for Plaintiffs to seek security from Novel for the $9,000,000, or whatever sum was pre-paid as security for ACODIS' alleged cargo claims to enable the release of the vessel NOGAT. However, even if Plaintiffs had provided ACODIS with the security it demanded, this too has been rejected by courts in this district as proper predicate for security under Supplemental Rule B for contingent indemnity claims. Royal Gold Investment, Inc. v. Louis Dreyfus Commodities Brasil S.A., 08 Civ. 9536 (LAK), 2009 U.S. Dist. LEXIS 57870 (S.D.N.Y. 2009) and Bang Guang Shipping Ltd. v. KN Resources Pvt Ltd., 09 Civ. 1008 (WHP), 2009 U.S. Dist. LEXIS 45801 (S.D.N.Y. 2009).

Because a Rule B plaintiff is required under Aqua Stoli, *supra*, to assert a valid prima facie admiralty claim and because an unripe indemnity claim is not, as a matter of law, a valid prima, facie claim, Plaintiffs' maritime attachment, to the extent it is founded upon its second cause of action, save for any *actual costs incurred and paid*, is an improper predicate for security under Supplemental Rule B and the maritime attachment should therefore be partially vacated or modified.

5

The Plaintiffs' Verified Complaint clearly provides in the second cause of action that it is seeking an indemnity against Novel for claims it has not yet paid, or even secured. As stated above, under English law this is a premature indemnity claim and as such cannot suffice as a *prima facie* valid admiralty claim for Supplemental Rule B purposes. It is therefore respectfully requested that this court partially vacate Plaintiffs' maritime attachment in accord with the Second Circuit Court of Appeals guidance in <u>Bottiglieri di Navigazione SpA v. Tradeline LLC</u>, *supra*, and the other district court decisions cited herein.

### POINT III

### PLAINTIFFS' ATTACHMENT FOR ESTIMATED ATTORNEYS FEES AND COSTS IN LONDON ARBITRATION IS EXCESSIVE AND SHOULD BE REDUCED

The proper extent of Plaintiffs' maritime attachment is the $805,715.34 set out in the first cause of action and the those damages actually incurred and paid costs / damages arising from the arrest of its Vessel NOGAT alleged in the second cause of action to be $121,926.81. Even if one were to assume for the sake of argument that the latter figure has risen to $200,000 the Plaintiffs' principal claims which are arguably proper for Rule B purposes are approximately $1,000,000. However, Plaintiffs have alleged estimated attorneys' fees and costs it expects to incur in the London arbitration in the sum of $1,500,000 which on its face is excessive.

In <u>Rolls Royce Industrial Power, (INDIA) v. M.V. FRATZIS</u>, 95 Civ. 2630 (CSH), 1995 WL 846690 (S.D.N.Y. 1995) Judge Haight opined that a three-part analysis should be undertaken by the court to assess whether a maritime attachment should be reduced. That test is as follows:

> [T]here are three questions which arise out of the authorities cited [including Admiralty Rule E(4)(f), Admiralty Rule E(6) and former Local Admiralty Rule 12] and others, to which I will come...
>
> The first: Is the plaintiffs' claim so lacking in merit as to be characterized as frivolous?

6

If that question is answered in the negative, then one comes to the second question which is: In obtaining the attachment at issue, have the plaintiffs engaged in improper practices to such a degree, or do the circumstances reveal a want of equity so manifest, as to require that the attachment be vacated in its entirety?

And the third question, if that be answered in the negative, is this: Is the amount attached excessive or is it reasonably necessary to secure the plaintiffs' claims?

It is upon last aspect of the test formulated by Judge Haight that Novel asserts a claim of $1,500,000 in estimated attorneys' fees and costs for a London arbitration is excessive and not reasonably necessary to secure the extent of Plaintiffs' maritime claims which, for Rule B purposes, are approximately $1,000,000. Defendant submits that security for estimated attorneys' fees and costs should not be permitted in an amount exceeding $250,000.00 (which is in any case a high estimate).

## CONCLUSION

For the foregoing reasons, the Court should partially vacate, or modify, the Order for Issuance of Process of Maritime Attachment and Garnishment, and all Plaintiffs by reducing the same by $10,250,000.

Specifically, the court should partially vacate or modify the Plaintiffs' maritime attachment in the sum of $9,000,000 for premature and contingent indemnity claims arising from Defendants alleged breach of the Letter of Indemnity. The court should also further partially vacate or modify the Plaintiffs' maritime attachment for excessive and not reasonably necessary security for estimated attorneys fees and costs in the sum of $1,250,000.00.

Dated: May 17, 2013
      New York, NY

                    Respectfully submitted,

                    The Defendant,
                    NOVEL COMMODITIES S.A.

By: _____
     Kevin J. Lennon (KL 5072)

LENNON, MURPHY, CAULFIELD
  & PHILLIPS, LLC
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax
klennon@lmcplegal.com

## AFFIRMATION OF SERVICE

I hereby certify that on May 17, 2013 a copy of the foregoing Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: _/s/ Kevin J. Lennon_
Kevin J. Lennon